**RUNFT DINDINGER KOHLER, PLLC**
Edward W. Dindinger (Idaho Bar No. 10144)
*Local Counsel*
1020 W. Main St., Suite 400
Boise, ID 83702
Phone: (208) 616-5459
E-mail: ewd@rdkboise.com

**INSTITUTE FOR JUSTICE**
Dan Alban (Virginia Bar No. 72688)*
*Lead Counsel for Plaintiffs*
Caroline Grace Brothers (D.C. Bar No. 1656094)*
*Lead Counsel for Plaintiffs*
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
E-mail: dalban@ij.org; cgbrothers@ij.org

*Counsel for Plaintiffs Tedy Okech, Adjo "Charlotte" Amoussou, and Sonia Ekemon*
*\*Applications for Admission* Pro Hac Vice *to be filed*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TEDY OKECH, ADJO "CHARLOTTE" AMOUSSOU, and SONIA EKEMON, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.  1:22-cv-106 |
| v. | ) ) ) | |
| DEBRA J. THOMPSON, in her official capacity as Chair of the Idaho Barber and Cosmetology Services Licensing Board, BRIAN PORTER, GENEAL THOMPSON, LINDY HIGH, MERRILYN CLELAND, THOMAS E. GRIMSMAN, and WENDY S. RUCKER, in their official capacities as members of the Idaho Barber and Cosmetology Services Licensing Board, | ) ) ) ) ) ) ) ) ) | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Defendants. | ) ) | |

## I.      INTRODUCTION

1.      This lawsuit seeks to vindicate the rights of African-style hair braiders who wish to provide natural hair braiding in Idaho for compensation without being forced to obtain a license in the completely separate occupation of cosmetology. Specifically, Plaintiffs Tedy Okech, Adjo "Charlotte" Amoussou, and Sonia Ekemon seek to braid hair for compensation in Idaho without a cosmetology license.

2.      The State of Idaho prevents Plaintiffs from lawfully pursuing their chosen livelihood by enforcing arbitrary, excessive, and anachronistic occupational licensing laws and regulations using the threat of criminal prosecution and civil fines of up to $1,000 per violation. Idaho requires African-style hair braiders to be licensed cosmetologists, which entails at least 1,600 hours of cosmetology training at a licensed cosmetology school or 3,200 hours in an apprenticeship with a licensed cosmetologist in addition to passing a written and a practical examination.

3.      Although African-style hair braiding is a method of natural hair care that does not involve cutting, perming, or dyeing hair, Idaho law requires African-style braiders to spend well over a thousand hours learning irrelevant skills before they can legally practice their occupation.

4.      In imposing irrelevant cosmetology licensing regulations on African-style hair braiders, the state is depriving Plaintiffs of their right to economic liberty and depriving the community of legal African-style hair braiding. Application of these occupational licensing laws denies Plaintiffs' rights to substantive due process and equal protection under the Fourteenth Amendment to the United States Constitution.

## II.    JURISDICTION AND VENUE

5.    Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. § 1983 for violations of the Fourteenth Amendment to the United States Constitution stemming from Defendants' enforcement of Idaho's cosmetology licensing regime—the Barber and Cosmetology Services Act, Idaho Code §§ 54-5801 to -5827; its implementing rules and regulations, Idaho Administrative Code 24.28.01; and the practices and policies of the Idaho Barber and Cosmetology Services Licensing Board—against those who practice African-style hair braiding.

6.    Plaintiffs seek declaratory and injunctive relief against Defendants to bar further enforcement of Idaho's cosmetology licensing regime insofar as it violates the Fourteenth Amendment to the United States Constitution.

7.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 1367.

8.    Venue is proper in this Court under 28 U.S.C. § 1391.

## III.    PARTIES

9.    Plaintiff Tedy Okech is a United States Citizen and resident of the City of Boise, in the County of Ada, Idaho. Tedy is originally from Uganda and she has been practicing African-style hair braiding for about fifteen years. She has two young children and she currently braids part-time for compensation. Tedy would like to keep braiding as a source of income for her family and grow her business. But for Idaho's prohibition on offering African-style braiding services without a cosmetology license, she would do so.

10.    Plaintiff Adjo "Charlotte" Amoussou is a United States Citizen and resident of the City of Meridian, in the County of Ada, Idaho. Charlotte learned African-style hair braiding as a teenager living in Benin, and now she has over twenty years of experience as braider. She spends

3

most of her time as a caregiver for her mother, but she also braids part-time for compensation. Charlotte would like to become a full-time braider and open a salon, but she cannot realistically do so because of Idaho's requirement that African-style braiders obtain a cosmetology license.

11.    Plaintiff Sonia Ekemon is a United States Citizen and resident of the City of Meridian, in the County of Ada, Idaho. She is a widow and single mother of three young children, whom she supports with her at-home African-style braiding business. Sonia is originally from Togo, and she learned to braid over twenty years ago while living in Benin. She would like to open an African-style braiding salon, but Idaho's requirement that African-style braiders obtain a cosmetology license prevents her from doing so.

12.    Defendant Debra J. Thompson is the Chair of the Idaho Barber and Cosmetology Services Licensing Board (the "Board"), in the City of Boise, in the County of Ada, Idaho. She is being sued in her official capacity. The Board is authorized by Idaho Code § 54-5807 to regulate the practices of cosmetology in the state of Idaho, to issue licenses, and to discipline persons considered to be in violation. Plaintiffs sue Defendant in her official capacity as the agent responsible for carrying out enforcement of the cosmetology licensing regime.

13.    Plaintiffs also sue the individual members of the Board, in their official capacities, as the agents ultimately responsible for carrying out enforcement of the cosmetology licensing regime. The Board members are Brian Porter, Geneal Thompson, Lindy High, Merrilyn Cleland, Thomas E. Grimsman, and Wendy S. Rucker.

## IV.    STATEMENT OF FACTS

**A.    Plaintiff Tedy Okech**

14.    Tedy Okech lives in Boise, Idaho with her two young children.

4

15.     She was born in Uganda and moved to the United States in 2005. She has lived in Boise for 17 years.

16.     Tedy is a self-taught African-style braider with about 15 years of braiding experience. She learned to braid when she was about 12 years old by practicing on her mother's and her sisters' hair.

17.     She is currently braiding her clients' hair for compensation. She runs an African-style braiding business with her business partner, Charlotte Amoussou.

18.     Tedy braids her clients' hair about two to four times per week.

19.     Because she does not have a cosmetology license, Tedy reasonably fears that the Board will enforce its licensing requirement to shut down her business.

20.     Tedy cannot afford to spend thousands of hours and tens of thousands of dollars to become a licensed cosmetologist.

21.     Tedy does not offer any other services to her clients besides braiding. She does not intend to offer any other hair, beauty, or personal care services in the future.

22.     Tedy does not cut, color, or treat hair with heat or chemicals, nor does she have any desire to do so in the future.

23.     Tedy and Charlotte charge their clients based on the size of the braids and the length of the hair. Cornrows, for example, typically cost between $30.00 and $80.00, while box braids cost between $150.00 and $250.00.

24.     Her braiding business is currently a part-time job. If Tedy is able to continue charging for braiding services, she wants to keep her braiding business as a source of income to support herself and her two children.

25. If this lawsuit is unsuccessful, Tedy would have to forfeit this much-needed income that she could earn by using her skills to provide safe African-style braiding services to previous and prospective clients.

**B.    Plaintiff Adjo "Charlotte" Amoussou**

26. Adjo "Charlotte" Amoussou lives in Meridian, Idaho with her sixteen-year-old son. She has been braiding for over 20 years.

27. Charlotte is originally from Togo in West Africa, and she moved to a refugee camp in Benin at age four.

28. She began braiding at 11 years old while living in Benin.

29. At age 16, she learned how to do complex braids at a salon in Benin and earned a braiding diploma there.

30. In 2008, when she was 19, Charlotte moved to Idaho.

31. While she was living in Idaho, she occasionally braided her friends' hair.

32. Two years later, Charlotte moved to Oregon. There, she braided hair as a side job.

33. In 2013, she moved to Boston, Massachusetts.

34. In Boston, Charlotte worked braiding hair in a salon owned by a woman whom she knew from her time in the refugee camp in Benin.

35. Charlotte moved back to Idaho in 2015. She lived in Boise until 2021, when she moved to Meridian.

36. She had plans to attend cosmetology school at Paul Mitchell in 2017, but then her mother fell ill and Charlotte could not take time away from caring for her mother to go to school.

37. Charlotte currently works full-time as a caregiver for her mother.

38.    Together with Tedy, Charlotte also braids hair on a part-time basis. They braid their clients' hair out of Charlotte's home in Meridian.

39.    They braid hair about two to four times a week, most often for friends.

40.    Because she does not have an Idaho cosmetology license, Charlotte reasonably fears that the Board will enforce its licensing requirement to shut down her business.

41.    Charlotte cannot afford to spend thousands of hours and tens of thousands of dollars to become a licensed cosmetologist.

42.    Charlotte does not offer any other services to her clients besides braiding. She does not intend to offer any other services in the future.

43.    Charlotte does not cut, color, or treat hair with heat or chemicals, nor does she have any desire to do so in the future.

44.    Charlotte and Tedy charge their clients based on the size of the braids and the length of the hair. Cornrows, for example, typically cost between $30.00 and $80.00, while box braids or single braids cost between $150.00 and $250.00.

45.    If Charlotte is able to continue charging for braiding services, she wants to open a salon and make her braiding business a full-time job to support herself and her son.

46.    If this lawsuit is unsuccessful, Charlotte would have to forfeit this much-needed income that she could earn by using her skills to provide safe African-style braiding services to previous and prospective clients.

**C.    Plaintiff Sonia Ekemon**

47.    Sonia Ekemon has been practicing African-style braiding for over 20 years. She is a widow and lives with her three children in Meridian, Idaho.

48.     Sonia was born in Togo. When she was about 12 years old, she was moved to a refugee camp in Benin. She learned to braid there when she was about 14.

49.     When she was about 17, Sonia earned a braiding diploma from a salon in Benin.

50.     In 2000, when she was 18 years old, Sonia moved to the United States. She lived in Boise, Idaho for about 15 years and then she moved to Meridian. She and her family have lived in Meridian for the past seven years.

51.     For the first few years that she lived in Idaho, Sonia braided hair for her friends and family without charging them.

52.     In 2003, she started braiding part-time for compensation.

53.     Since 2015, braiding has been Sonia's full-time job. She estimates that she braids hair about three to five days per week.

54.     Most of Sonia's clients are children adopted from African countries.

55.     The money that Sonia earns from braiding is her family's only source of income.

56.     Because she does not have an Idaho cosmetology license, Sonia reasonably fears that the Board will enforce its licensing requirement to shut down her business.

57.     Sonia cannot afford to spend thousands of hours and tens of thousands of dollars to become a licensed cosmetologist.

58.     Sonia does not offer any other services to her clients besides braiding. She does not intend to offer any other services in the future.

59.     Sonia does not cut, color, or treat hair with heat or chemicals, nor does she have any desire to do so in the future.

60.     Sonia charges her clients between $50.00 and $250.00 per session, based on the size and complexity of the braids.

61.     If Sonia is able to continue charging for braiding services, she wants to open a salon and continue supporting her family by braiding.

62.     If this lawsuit is unsuccessful, Sonia would have to forfeit this much-needed income for her family that she could earn by using her skills to provide safe African-style braiding services to previous and prospective clients.

**D.      African-Style Hair Braiding**

63.     As used in this Complaint, "African-style hair braiding" refers to braiding, locking, twisting, weaving, cornrowing, or otherwise physically manipulating hair without the use of chemicals that alter the hair's physical characteristics. It incorporates both traditional and modern styling techniques. African-style hair braiding is a method of natural hair care.

64.     African-style hair braiding is so called because it has distinct geographic, cultural, historical, and racial roots. The basis for African-style hair-braiding techniques originated many centuries ago in Africa and were brought by Africans to this country, where they have endured (and have been expanded upon) as a distinct and popular form of hair styling mainly done by and for persons of African descent.

65.     The practice of African-style hair braiding is distinct from other types of hair styling more common in the United States and dramatically differs from general hair braiding, such as French braids. African-style hair braiding is a labor-intensive process, usually taking a single stylist several hours to complete.

66.     Often, persons of African descent learn to braid textured hair as children or teens, usually by first learning to do their own hair or that of friends and relatives.

67.     African-style hair braiding is typically performed on hair that is physically unique, often described as "tightly textured" or "coily" hair. This physical characteristic is

genetically found to be in close correlation with race. In the United States, African-style hair braiding is most popular with men and women of African descent, who tend to have more textured hair. For many of these individuals the choice of African-style hair braiding (rather than mainstream styles taught in cosmetology schools) is as much a cultural statement and expression of self-identity as it is simply an aesthetic concern.

68.     The concept of natural hair care is particularly meaningful for many African Americans because, for decades, Western culture pressured African Americans to use chemicals or heat to straighten their hair. These Western methods are still prevalent in American cosmetology schools. African-style hair braiding provides an alternative to current "corrective" measures by working with a person's natural hair texture.

69.     Because the use of chemicals is anathema to natural hair care, African-style hair-braiding techniques are safe for practitioners and customers. For many women with textured hair, African-style hair braiding provides a reprieve after years of harsh chemical treatment of their hair. For example, sodium hydroxide, the active ingredient in many hair straighteners, has a high incidence of chemical burns because it is very caustic. It can burn human hair and skin.

70.     Tedy, Charlotte, Sonia, and other African-style hair braiders rely on their experience and skills, and only use common or simple tools used by women to do their own hair—such as combs, picks, and hair ties—to create intricate, diverse, and expressive hair styles without heat, dyes, or other chemicals.

E.     **Idaho's Regulation of Cosmetology**

71.     Idaho's cosmetology regime is codified at Idaho Code §§ 54-5801 to -5827.

72.     The Idaho Barber and Cosmetology Services Licensing Board was created under the Barber and Cosmetology Services Act. S.B. 1324, 64th Leg., 2d Reg. Sess. (Idaho 2018).

10

73.     Idaho Code § 54-5806 establishes the composition of the Board and the length of terms of its members.

74.     Idaho Code § 54-5807 establishes the powers of the Board, including the power to issue cosmetology licenses, regulate the practice of cosmetology, and enforce the Idaho Barber and Cosmetology Services Act.

75.     Idaho Code § 54-5802(9)(a) defines "[c]osmetology" as including "[c]utting, trimming, arranging, dressing, curling, waving by any method, cleansing, singeing, bleaching, coloring or performing similar work on the hair."

76.     Idaho Administrative Code 24.28.01.502.03.a requires cosmetology schools to maintain a record of the operations completed by each student, which shall include: "[c]reative hair styling which shall include hair styles, wet sets/styling, thermal styles, fingerwaving, [and] braiding/free styling."

77.     The Board construes the definition of cosmetology in Idaho Code § 54-5802(9)(a) and Idaho Administrative Code 24.28.01.502.03.a to include the practice of African-style hair braiding, even though the practice of African-style hair braiding is very different from the practice of cosmetology.

78.     Idaho Code § 54-5803 provides that it is "unlawful for any person to practice or offer to practice an occupation defined in and governed by this chapter," which includes cosmetology, "unless the person has been duly licensed, certificated or registered under the provisions of this chapter."

79.     Idaho Code § 54-5826(4) provides that the practice of cosmetology without a license is punishable as a misdemeanor.

80.    Idaho Code § 54-5807(3) authorizes the Board to impose a civil fine of up to $1,000 for each violation of the Idaho Barber and Cosmetology Services Act or the Board's implementing rules and regulations.

**F.    Idaho's Regulation of African-Style Hair Braiding as Cosmetology**

81.    The Board requires that individuals providing African-style hair-braiding services become individually-licensed cosmetologists.

82.    For example, on October 7, 2020, an African-style hair braider e-mailed the Board to inquire whether she really needed to have a cosmetology license to perform natural hair braiding for compensation.

83.    The Board responded to the braider by e-mail on October 28, 2020, confirming that African-style braiders need a cosmetology license to braid: "Current law and rule lists hair braiding in the scope of practice of a cosmetology license, Idaho Code § 52-5802 (9) (a) and Idaho rule 502.03 (a). In order to offer [natural hair braiding] services you will need to hold a cosmetology license."

**G.    Idaho's Cosmetology License Requirements**

84.    Idaho Code § 54-5803 provides that it is "unlawful for any person to practice or offer to practice an occupation defined in and governed by this chapter," which includes cosmetology, "unless the person has been duly licensed, certificated or registered under the provisions of this chapter."

85.    To receive a cosmetology license in Idaho, applicants must: be at least 16.5 years old, have completed at least two years of high school or the equivalent, not have engaged in any conduct that constitutes any grounds for discipline, and have good moral character. *See* Idaho Code § 54-5810(1)(a)–(b), (d); Idaho Admin. Code r. 24.28.01.300.

86.    Cosmetology license applicants must also satisfy one of three training requirements:

    a.    Graduate from an approved cosmetology school in Idaho with at least 1,600 training hours, *see* Idaho Code § 54-5810(2)(c)(i); Idaho Admin. Code r. 24.28.01.301.03;

    b.    Complete a cosmetology apprenticeship of at least 3,200 hours under the supervision of a licensed cosmetologist covering "all aspects of the practice of cosmetology," Idaho Code § 54-5810(2)(c)(ii), (4); *see also* Idaho Admin. Code r. 24.28.01.550; or

    c.    Show that they hold a cosmetology license from another jurisdiction and satisfy age, high school education, and conduct requirements, *see* Idaho Code § 54-5816; Idaho Admin. Code r. 24.28.01.313.

87.    An Idaho cosmetology license applicant must also complete written and practical cosmetology examinations provided by the National Interstate Council of State Boards of Cosmetology (NIC). *See* Idaho Code §§ 54-5809, 54-5810(1)(c); Idaho Admin. Code r. 24.28.01.311.

88.    The current version of NIC's written cosmetology examination has 110 questions.[1] 40 percent of the examination covers "hair care and services." This category is broken down into five subtopics, one of which is "[h]air [d]esign." "Hair Design" is broken into four parts, one being "hair styling." "[H]air styling" is further divided into three subparts, one of which is "[n]atural hair styling (e.g., braiding)."

---

[1] *See National Cosmetology Theory Examination: Candidate Information Bulletin* 2 (revised Mar. 1, 2020), https://nictesting.org/wp-content/uploads/formidable/3/NIC_Cosmetology-Theory_CIB_ENG_Eff.-5.1.2016-v.3.1.20.f.pdf.

89.    Accordingly, only about two percent of Idaho's written cosmetology examination covers hair braiding. That means that no more than three questions out of 110 are about braiding.[2] There is no guarantee that any of these questions are about African-style hair braiding rather than general braiding techniques such as French braids.

90.    NIC's current practical examination covers neither natural hair styling nor braiding.[3]

**H.    Idaho's Cosmetology School Curriculum**

91.    Idaho cosmetology schools must submit to the Board a curriculum and catalog providing "applicable curricula on hygiene, bacteriology, and elementary chemistry relating to disinfection and antiseptics." Idaho Code § 54-5815(1)(g). *See also* Idaho Admin. Code r. 24.28.01.500.04.

92.    Idaho Code § 54-5815(1)(h)(i) requires that licensed cosmetology schools' "curriculum for cosmetology" include the following subjects:

> histology of the hair, skin, muscles, nails and nerves; structure of the head, face and neck; diseases of the skin, hair, glands and nails; massaging and manipulating the muscles of the body; permanent waving, haircutting and arranging, dressing, coloring, bleaching and tinting of the hair; a study of electricity as applied to cosmetology; and the Idaho laws and rules governing the practice of cosmetology.

---

[2] The version of the NIC written examination available on the website of Idaho's testing provider is from 2016. The breakdown of topics tested and the percentage that covers hair braiding is the same as the 2020 version. *See National Cosmetology Theory Examination: Candidate Information Bulletin* (eff. May 2016), http://www.dlroope.com/forms/all_states/NIC_ Cosmetology_Written_CIB_ID_ME_MT_NC_NH_WI_WV.pdf.

[3] D.L. Roope, *Candidate Handbook, Idaho Cosmetology* 9, 11–33 (July 2020), http://www.dlroope.com/forms/idaho/ID_CA_Handbook_and_NIC_CIB.pdf; *see* NIC, *Master List of Candidate Information Bulletins*, https://nictesting.org/candidate-information-bulletins/?categoryname=COS&testtype=Practical&languagename=English&show_view=yes.

93.     Under Idaho Administrative Code 24.28.01.502.03, a licensed cosmetology school must maintain records showing that each student, during their 1,600 hours of study, completed training in the following "operations":

a.  Creative hair styling which shall include hair styles, wet sets/styling, thermal styles, fingerwaving, braiding/free styling;
b.  Scalp Treatments;
c.  Permanent Waves (All Methods);
d.  Haircutting/shaping which shall include scissor and razor/clipper;
e.  Bleaching;
f.  Tinting;
g.  Semi Permanent/Temporary Color;
h.  Frosting/Highlights;
i.  Facials;
j.  Makeup Application;
k.  Waxing;
l.  Manicures which shall include plain and oil;
m.  Pedicures;
n.  Artificial Nails; and
o.  Hygiene and disinfection shall be taught on a continuing basis and indicated on the record of instruction.

94.     Neither Idaho's statutes nor regulations provide for specific hours of instruction in each subject area or operation.

95.     Upon information and belief, to the extent that the cosmetology curriculum does address how to style textured or African hair at all, it teaches about the use of heat or chemicals to relax, straighten, soften, or otherwise alter the hair from its natural, textured state.

96.     Upon information and belief, "fingerwaving, braiding/free styling," as it is taught in the cosmetology curriculum, includes such techniques that are often performed on people with traditionally smooth, non-textured, non-coily hair. Idaho Admin. Code r. 24.28.01.502.03.a.

97.     The cosmetology curriculum does not include natural, African-style hair braiding techniques or styles as a component of mandatory cosmetology education or training.

15

98.    Attendance at a licensed cosmetology school in Idaho can cost more than $20,000. For example, the cost of tuition and mandatory school supplies at the Paul Mitchell school located at 1270 South Vinnell Way, Boise, Idaho 83709 is $21,495.00.[4]

99.    Like Idaho cosmetology schools, the state's cosmetology apprenticeship instructors must also submit to the Board a curriculum and catalog providing "applicable curricula on hygiene, bacteriology, and elementary chemistry relating to disinfection and antiseptics." Idaho Code § 54-5815(1)(g). *See also* Idaho Admin. Code r. 24.28.01.550.02.

100.    Neither Idaho's statutes nor regulations provide mandatory curriculum for cosmetology apprenticeships.

101.    There is no requirement that cosmetology apprenticeships include any training in natural, African-style hair braiding.

102.    There is no mechanism to ensure that someone who is trained and licensed as a cosmetologist in Idaho—either through attending cosmetology school or an apprenticeship—has received any training in natural, African-style hair braiding.

103.    There is thus no reason to expect that someone who is trained and licensed as a cosmetologist in Idaho is able to safely and competently provide natural, African-style hair braiding services.

I.    **Effects of Treating African-Style Hair Braiding as Cosmetology**

104.    Although the Board treats African-style hair braiding as cosmetology, the Board-approved cosmetology curricula do not require cosmetology schools to teach African-style hair braiding, which consists of braiding, locking, twisting, weaving, cornrowing,

---

[4] *See* Paul Mitchell The School Boise, "Cosmetology Programs: How Much Will It Cost?," https://paulmitchell.edu/boise/programs/cosmetology (last visited Mar. 2, 2022).

16

or otherwise physically manipulating "tightly textured" or "coily" hair without the use of chemicals.

105.    Idaho cosmetology schools are not required to teach any aspect of natural, African-style hair braiding.

106.    None of the practical examination required to become a licensed cosmetologist in Idaho tests any knowledge of natural, African-style hair braiding.

107.    Only about two percent of the written examination required to become a licensed cosmetologist in Idaho tests any knowledge of natural hair styling or braiding.

108.    But preparation for the cosmetology examinations does require extensive knowledge of practices that are antithetical to the principles and cultural foundations of African-style hair braiding, such as the use of heat or chemicals to relax, straighten, soften, or otherwise alter the hair from its natural, textured state.

109.    Under Idaho's cosmetology licensing regime, someone versed in African-style hair braiding may not provide African-style hair braiding for compensation without a cosmetology license.

110.    At the same time, someone with a cosmetology license need not have any experience or skills in African-style hair braiding to provide African-style hair braiding for compensation.

111.    The state's cosmetology licensing regime irrationally limits the lawful provision of African-style hair braiding to only those who need not know anything about African-style hair braiding, while precluding those who are specifically skilled in these techniques from lawfully offering their services to the public unless they obtain an irrelevant license to practice a different profession.

112.    Idaho's cosmetology licensing regime does not require any training in African-style hair braiding, but requires cosmetology licensure to provide African-style hair braiding. Therefore, it irrationally treats similarly situated people differently by only permitting some people (cosmetologists) who have no training in African-style hair braiding to provide African-style hair braiding for compensation, while preventing others who have no training in African-style hair braiding to provide African-style hair braiding for compensation.

113.    Even worse, Idaho's cosmetology licensing regime actually *prevents* those who do have training in African-style hair braiding from offering African-style hair braiding for compensation (unless they have an irrelevant cosmetology license).

114.    Idaho's cosmetology licensing regime irrationally treats differently situated people the same by treating African-style hair braiders exactly like cosmetologists, despite these professions being substantially different—far more different than cosmetology and barbering, for example.

115.    Idaho's cosmetology licensing regime subjects African-style hair braiders to regulations and licensing requirements designed for and relevant to the practice of cosmetology, which does not include or resemble African-style hair braiding.

116.    Idaho's current cosmetology licensing regime has the intent and effect of establishing and maintaining a cartel for cosmetology services within Idaho. The Board develops and enforces regulations and practices. And the law requires that the Board consist of six practitioners within the regulated industries (for example, two cosmetologists) and only one member of the public. *See* Idaho Code § 54-5806(2).

117.    The regulatory barriers to entry into this profession deprive African-style hair braiders of entrepreneurial employment and training opportunities. These barriers have a

18

particularly harsh effect on low-income individuals in the African American and African immigrant and refugee communities.

118.    Idaho's current cosmetology licensing regime drives some African-style hair braiders "underground." For example, African-style hair braiding will often be performed out of the hair braider's home or customers' homes. Among many customers of African-style hair braiding, the existence of a thriving underground economy is an open secret.

119.    Braiders in the underground economy, however, constantly risk prosecution and civil fines, and thus reasonably fear advertising their services.

120.    Idaho's current cosmetology licensing regime has produced a dearth of good options for consumers who wish to purchase African-style hair-braiding services:

a.  Almost no licensed cosmetologists offer African-style hair-braiding services. If a licensed cosmetologist does braid, she can charge high fees because of a lack of "legal" competition.

b.  Some consumers may patronize unlicensed African-style hair braiders, who know how to braid and may charge less than a licensed cosmetologist. But these unlicensed braiders, if they receive payment, are violating Idaho law and are subject to sanctions, and are thus deterred from openly offering or providing their services.

c.  Some consumers may rely on friends and family to braid without compensation. But these braiders must dedicate long hours for no pay, and thus are deterred from providing their services.

19

    d.   Some consumers may leave the state of Idaho to receive African-style hair-braiding services in states, like Utah or Washington, that do not have licensing regimes that regulate a harmless activity into nonexistence.

121.    By contrast, tattoo artists do not need a license to practice their trade in the state of Idaho.

122.    Similarly, the practice of microblading—etching pigment into the skin of a person's eyebrows using a tool formed with tiny needles to create a semipermanent tattoo—requires no license, training, or examinations in the state of Idaho.

123.    So a braider could legally use a needle to etch ink under her client's skin within an inch of her client's eyes without a license or training, but she would need to spend well over a thousand hours and a small fortune acquiring a cosmetology license before she could legally braid that same client's hair.

124.    Idaho's current cosmetology licensing regime prevents African-style hair braiders from more effectively advertising their services and expanding their businesses for fear of being subject to sanctions from the Board and then forced to acquire an irrelevant cosmetology license in order to continue offering their braiding services.

## V.    <u>HARM TO PLAINTIFFS</u>

125.    Application of Idaho's cosmetology licensing regime to African-style hair braiders has caused and will continue to substantially harm Plaintiffs.

126.    Plaintiffs cannot legally braid for money unless they spend thousands of hours and tens of thousands of dollars on training that teaches them information and skills they need not know to continue their craft. Furthermore, they must take a practical examination that does

not test braiding and sit for a written examination, about 98 percent of which will test them on information and skills that bear no relation to African-style hair braiding.

127.    Plaintiffs would be forced to either attend a licensed cosmetology school or enroll in a cosmetology apprenticeship to become a licensed cosmetologist. None of the Plaintiffs can afford to spend thousands of hours—at least 1,600 hours at a licensed cosmetology school or at least 3,200 hours in an unpaid cosmetology apprenticeship—learning skills they do not need or use in the practice of African-style hair braiding while working other jobs and taking care of their families.

128.    Nor can any of the Plaintiffs afford to pay for a licensed cosmetology school, which can cost more than $20,000 to attend, to receive training that is irrelevant to African-style hair braiding.

129.    If they had to obtain a cosmetology license, Plaintiffs would be forced to handle potentially hazardous chemicals during cosmetology training that they do not want to handle and would not otherwise handle as African-style hair braiders.

130.    If Plaintiffs Tedy Okech, Charlotte Amoussou, and Sonia Ekemon continue to provide African-style hair braiding for compensation, they risk punishment—including a criminal conviction and civil fines up to $1,000 per violation, *see* Idaho Code §§ 54-5807(3), 54-5826—unless they first obtain a cosmetology license.

131.    If this lawsuit is unsuccessful and the Board continues to enforce the cosmetology licensing requirements against African-style hair braiders, Plaintiffs will either have to waste approximately $20,000 (or more) and 1,600 hours on cosmetology school training (or 3,200 hours in an unpaid cosmetology apprenticeship program) or they will not be able to offer braiding services for compensation and will be deprived of that income.

21

132.    Plaintiffs can and would provide professional, high-quality braiding services. Yet Idaho's cosmetology licensing regime constantly threatens to impair their ability to practice their chosen profession and offer services they are experienced in providing to support their families.

## VI.    CAUSE OF ACTION

### (Violation of Substantive Due Process and Equal Protection Rights

### under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983)

133.    Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 through 132 of this Complaint as set forth fully herein.

134.    The Fourteenth Amendment's Due Process Clause protects the right to earn a living in the occupation of a person's choice subject only to reasonable government regulation.

135.    The Fourteenth Amendment's Equal Protection Clause also protects both similarly situated people from being treated differently and differently situated people from being treated similarly.

136.    Requiring Plaintiffs to undergo at least 1,600 hours of irrelevant cosmetology training, which requires no instruction in African-style hair braiding, is not rationally related to any legitimate government interest.

137.    Requiring African-style hair braiders to spend thousands of hours either attending cosmetology school or in a cosmetology apprenticeship to obtain a cosmetology license, while neglecting instruction or training on the natural hair care needs of persons with textured hair, is not rationally related to public health or safety.

138.    Idaho does not require cosmetology curricula to include African-style hair braiding. People who do not hold a cosmetology license are therefore similarly situated to people who do hold a cosmetology license, because neither of them are required to have received

training in the practice of African-style hair braiding. Yet, Idaho allows people who do hold a cosmetology license to practice African-style hair braiding and prevents people who do not hold a cosmetology license from practicing the same profession. This irrationally treats similarly situated people differently.

139. African-style hair braiders do not provide cosmetology services and do not hold themselves out as cosmetologists; thus, Plaintiffs and other African-style hair braiders who exclusively offer natural hair braiding cannot be subject to the same regulations and licensing requirements as cosmetologists. Requiring African-style hair braiders to obtain a cosmetology license in order to offer African-style hair braiding (and not cosmetology services) for compensation thus irrationally treats differently situated people as though they are the same.

140. Idaho's current cosmetology law and regulations, as applied to Plaintiffs by Defendants, their agents and employees, acting under the color of state law, arbitrarily and unreasonably prohibit Plaintiffs from pursuing their chosen livelihood by forcing them to obtain a license that is irrelevant to their profession and subjecting them to criminal penalties and fines, thus threatening the existence, profitability, and potential growth of their hair braiding businesses (or potential hair braiding business).

141. The arbitrary diminution of Plaintiffs' economic liberty by the imposition of these regulations deprives them of substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

142. By not providing an equal opportunity for individuals trained in the practice of African-style hair braiding to lawfully offer their services to meet public demand, Defendants, their agents, and employees, acting under color of state law, violate Plaintiffs' right to equal

protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

143.    As a direct and proximate result of Defendants' application of Idaho's cosmetology licensing regime to African-style hair braiders, including Plaintiffs, African-style hair braiders have no other adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights. Unless this Court enjoins Defendants from committing the above-described constitutional violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, African-style hair braiders, including Plaintiffs, will continue to suffer great and irreparable harm.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. An entry of judgment declaring that the cosmetology licensing regime—Idaho Barber and Cosmetology Services Act, Idaho Code §§ 54-5801 to -5827; its implementing rules and regulations, Idaho Administrative Code 24.28.01; and the practices and policies of the Idaho Barber and Cosmetology Services Licensing Board—is unconstitutional when applied to African-style hair braiders generally and to Plaintiffs specifically;

B. A permanent injunction prohibiting Defendants from enforcing Idaho Code §§ 54-5801 to -5827 and Idaho Administrative Code 24.28.01, against African-style hair braiders generally and to Plaintiffs specifically;

C. An award of attorneys' fees, costs, and expenses in this action under 42 U.S.C. § 1988; and

D. All further legal and equitable relief as the Court may deem just and proper.

24

RESPECTFULLY SUBMITTED this 8th day of March, 2022.

**RUNFT DINDINGER KOHLER, PLLC**

/s/ Edward W. Dindinger
Edward W. Dindinger (Idaho Bar No. 10144)
*Local Counsel*
1020 W. Main St., Suite 400
Boise, ID 83702
Phone: (208) 616-5459
E-mail: ewd@rdkboise.com

**INSTITUTE FOR JUSTICE**

Dan L. Alban (Virginia Bar No. 72688)*
*Lead Counsel for Plaintiffs*
Caroline Grace Brothers (D.C. Bar No. 1656094)*
*Lead Counsel for Plaintiffs*
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
E-mail: dalban@ij.org; cgbrothers@ij.org

*Counsel for Plaintiffs Tedy Okech, Adjo
"Charlotte" Amoussou, and Sonia Ekemon
*Applications for Admission* Pro Hac Vice *to be
filed*